**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

PAMELA S. STAMPER,                          )
                                            )
      Plaintiff,                       )
                                            )
v.                                          )          Case No. 19-CV-329-TCK-JFJ
                                            )
BOILERMAKER-BLACKSMITH                      )
NATIONAL PENSION TRUST,                     )
                                            )
      Defendant.                       )

## OPINION AND ORDER

Before the Court is plaintiff Pamela S. Stamper's (Stamper or Plaintiff) appeal of the denial of her benefits claim by the Boilermaker-Blacksmith National Pension Trust (Trust). The appeal is brought pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction pursuant to ERISA, § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

Plaintiff is the surviving spouse and widow of Charles R. Brown (Brown), who died in December, 2017, at the age of 65. During his lifetime, Brown worked in the boilermaker trade and was a member of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO (Union). Through his Union membership, Brown was a participant of the Boilermaker-Blacksmith National Pension Plan (Plan), which is managed and administered by the Trust. After being diagnosed with cancer in late 2006, Brown applied for an Early Retirement Pension and was awarded an Annuity Starting Date (ASD) of October 1, 2007 for his pension benefits. When Brown was approved for Social Security Disability Insurance (SSDI) benefits by the Social Security Administration (SSA), he notified the Trust to convert his Early Retirement Pension to Disability Pension. In so doing, Brown requested that the Trust change his

form of benefit from a 50% Husband-and-Wife survivor annuity to a life annuity with 120-month guaranteed payment lifetime annuity. In August, 2009, the Trust finalized the conversion and changed Brown's benefit pursuant to his request, but the Trust maintained Brown's ASD of October 1, 2007.

Upon Brown's death in December 2017 and after having received 123 monthly pension payments, the Trust notified Stamper that she was not entitled to survivor benefits because of the pension conversion. Stamper challenges the Trust's denial of surviving spouse benefits and requests judicial review under 29 U.S.C. § 1132(a)(1)(B), arguing that the Trust erroneously applied the October 1, 2007 ASD to Brown's converted Disability Pension. The Trust responds that the Plan in effect at the time of the conversion[1] provided for a retroactive ASD, and consequently, Brown's ASD remained unchanged even though his form of benefit changed. Thus, broadly speaking, the issue before the Court is whether the Trust reasonably construed the Plan's terms in applying the October 1, 2007 ASD to Brown's Disability Pension.

## I. FACTUAL BACKGROUND

### A. Brown's Early Retirement Pension

Brown was diagnosed with cancer, and in 2006, due to the effects of his radiation treatments, Brown was no longer able to work. Docs. 26-6 at 145 and 26-7 at 92.[2] The record reflects that, as early as May 2007, Brown contacted the Trust to inquire about his pension benefit options for disability. Doc. 26-7 at 113. In response, the Trust informed Brown that a Disability

---

1. The Plan in effect at the time of Brown's application and all relevant dates in this case is the Eleventh Restatement of the Rules and Regulations of the Pension Plan, including Amendments 1-8. Doc. 26-4 at 1-107. Unless otherwise indicated, use of the word "Plan" herein is in reference to the Eleventh Restatement, including Amendments 1-8.

2. This Opinion and Order references exhibits by their page number in the CM/ECF record.

Pension application cannot be processed until he receives a certificate of award from the SSA, but that his "Early Retirement Pension could be changed . . . to Disability, if [his] date of entitlement to disability benefits [was] prior to, or within 12 months following, the effective date of [his] Early Retirement Pension." *Id.* at 109. In light of this, the Trust provided Brown with Early Retirement Pension estimates, payable as either a husband-and-wife joint survivor annuity or a 60-month single life annuity. *Id.* at 110-12. The Trust's letter explained that a husband-and-wife survivor annuity provides the surviving spouse of a predeceased participant with a monthly pension payment (albeit at a reduced amount) for the remainder of the spouse's life. *Id.* By contrast, the Trust explained that a certain payment single life annuity guarantees payment for a certain period of 60 months or for the life of the participant, whichever is longer; in the event a participant predeceases the guaranteed number of monthly payments, the remaining payments would pass to the participant's named beneficiary. *Id.* In closing, the Trust instructed Brown to request a pension application "[a]bout two months before you wish to retire." *Id.* at 111.

Brown contacted the Trust on July 19, 2007 to request a pension application. *Id.* at 108. In a series of letters dated July 24, 2007, the Trust provided Brown with the necessary pension application materials; estimates of the various pension options available to Brown and the relative value explanation for each option; and detailed instructions regarding the application process and the dates by which application materials and benefit elections must be submitted. *Id.* at 103-07.

Brown submitted his complete application for pension benefits on September 14, 2007—the earliest date that he qualified for the Plan's Early Retirement Pension.[3] Doc. 26-6 at 161-69.

---

3. According to the Plan, an otherwise eligible participant must be at least 55 to qualify for the Early Retirement Pension. Doc. 26-4 at 18. Having previously satisfied all other conditions for eligibility, Brown submitted his Early Retirement Pension application on his fifty-fifth birthday. Doc. 26-6 at 161.

Under the Plan rules, eligible participants who submit a complete application for benefits on or before the fourteenth day of the month are entitled to an ASD on the first day of the following month. Doc. 26-4 at 86. On January 9, 2008, the Trust notified Brown that his Early Retirement Pension application was approved, and in accordance with the Plan rules, Brown's ASD was determined to be October 1, 2007. Doc. 26-7 at 80-81.

The record contains the documents submitted by Brown as part of his September 14, 2007 Early Retirement Pension application. Of particular relevance, Brown's Early Retirement application form indicated that he had applied for SSDI and that his case was still under review by the SSA at the time of his application. Doc. 26-6 at 161. His Early Retirement Pension application also included a number of documents regarding his pension benefit elections. Notably, on a document titled, "How My Pension Is To Be Paid," Brown elected to receive his pension in the form of a 50% Husband-and-Wife Pension. *Id.* at 167. That document and a separate spousal consent and waiver document[4] were signed and dated before a Notary Public by Brown and Stamper on September 14, 2007. *Id.* at 164, 167. Brown also requested to be advised of the additional amount he could receive with the Social Security Level Income option (Level Income) offered by the Plan.[5] *Id.* at 169.

---

4. This document waives the mandatory 30-day waiting period between benefit election and the ASD, and the document also provides Stamper's consent to Brown's changing the form of benefit or designation of beneficiary. Doc. 26-7 at 80-81.

5. The Level Income option was offered to the Plan's Early Retirement pensioners, and it provided an increased monthly benefit until the pensioner reached the Social Security Normal Retirement Age and correspondingly reduced thereafter. Doc. 26-4 at 26-27. According to the record, after receiving notice that the exact amount he would receive from the Level Income option would be additional $949.76 per month, Brown elected to receive the Level Income additional benefit, which is indicated on a form signed by Brown and Stamper on November 27, 2007. Doc. 26-7 at 83-85. The Level Income option was not available for Disability Pensions, *id.* at 27; however, under § 3.19(f) of the Plan, otherwise eligible Early Retirement pensioners who wish to convert to a Disability Pension may do so, provided that the additional amount they received from the Level Income be repaid by offset of the Disability Pension after the conversion. *Id.* at 28.

Upon its approval of Brown's Early Retirement Pension application, the Trust issued a check for the monthly payments owed to Brown from his ASD through January 9, 2008—the date of approval for Brown's pension. *Id.*

**B. Conversion of Brown's Early Retirement Pension to Disability Pension**

On January 21, 2008, Brown sent the Trust a letter advising that he had recently been awarded Social Security disability benefits and wished to convert his Early Retirement Pension to a Disability Pension. *Id.* at 71-77. He attached a copy of the Notice of Award from the SSA, which stated that he was entitled to SSDI benefits beginning December 2006 and that he would receive regular monthly SSDI payments "effective January 2008." *Id.* at 77.

In a letter dated March 28, 2008, the Trust acknowledged Brown's request to convert his Early Retirement Pension to a Disability Pension, informed him that the Level Income option he was receiving is not allowable with a Disability Pension, and enclosed a letter with estimates of the various benefit elections available under Brown's Disability Pension and the relative value explanation for each election. *Id.* at 66-70. Pursuant to § 4.07(f) of the Plan, "[i]n the event **a Pensioner is granted a Social Security Disability Award** . . . **effective during the 12-month period immediately following the commencement of his Early Retirement Pension** . . . he will be allowed to **change his previous election** or rejection of the Husband-and-Wife Pension." Doc. 26-4 at 33 (emphasis added). Accordingly, the letter explained the benefits available to Brown, which included the various Husband-and-Wife survivorship annuities, the 60-month single life annuity, and the 120 Certain Payment annuity option.[6] Of relevance, the letter stated that Brown

6. The "How My Benefits Is To Be Paid Form" refers to this as the "120-Month Option." *See e.g.* Doc. 26-7 at 64. However, the Plan refers to this benefit as the "120 Certain Payment" option. Doc. 26-4 at 23. The Trust also makes references to this as the "120 Month Certain Option" form

would receive $3,085.54 per month if he elected the 50% Husband-and-Wife survivor annuity, or alternatively, $3,508.80 per month if Brown elected the 120 Certain Payment annuity option. *Id.* at 68. The letter also included a new "How My Pension Is To Be Paid" election form for Brown to complete. Doc. 26-7 at 67-69.

The Trust wrote to Brown on May 22, 2008, stating that it had not received a response to its March 28, 2008, letter. *Id.* at 65. To that end, the Trust instructed Brown to return the election form if he wished to continue with the process of converting his Early Retirement Pension into a Disability Pension. *Id.* In response, Brown sent the "How My Pension Is To Be Paid" election form to the Trust, electing to receive his Disability Pension in the form of a 120 Certain Payment life annuity. *Id.* at 64. The form was signed and dated by both Brown and Stamper on May 5, 2008, and their signatures were executed before a Notary Public. *Id.* However, on July 10, 2008, the Trust, again wrote to Brown, and while it acknowledged receiving Brown's election form, the Trust reminded Brown that he needed to repay the money he had received from the Level Income option before his Disability Pension payments could commence. *Id.* at 61. Accordingly, the Trust instructed Brown that he must provide a written request to have the Level Income payments he had received to date deducted from his initial Disability Pension check, and upon the Trust's receipt of that request, payments on his Disability Pension would commence. *Id.*

The record does not contain any further correspondence between Brown and the Trust until February 26, 2009, when the Trust wrote Brown to inform him that it had not received any response to its July 10, 2008 letter. *Id.* at 55. The Trust, again, provided Brown with the various benefit elections available to him under a Disability Pension and the relative value explanation for each

---

of benefit. Doc. 26-9 at 1. These terms are used interchangeably to refer to an annuity that is payable for the lifetime of the participant but with a 120-payment guarantee.

election. *Id.* at 56-59. The Trust also sent Brown a new "How My Pension Is To Be Paid" form

for he and Stamper to complete. On June 10, 2009, Brown wrote to the Trust, stating,

> I would like at this time to change my early retirement pension to a disability pension. I understand that all the paperwork is in order except for my signed approval of paying back the level income option funds and "How my benefits is to be paid form".
>
> This statement is to verify that as [of] June 1, 2009, I have received a total amount of $19,944.96 which is a total of 21 months of level income option. I understand that you will need to deduct this amount (or an additional month if need be) from my first disability pension check.
>
> Also, my "How my benefits is to be paid form" is enclosed.
>
> Please notify me when I could expect my first check which would include the retroactive amounts of my disability pension minus the early retirement benefits and minus the level income option amounts. My figure for the amount of my first check is $44,982.36 as of June 1, 2009. The subsequent amount per month would be $3,508.80.

*Id.* at 54. Brown included a newly executed and notarized "How My Pension Is To Be Paid" form,

signed by both Brown and Stamper on June 18, 2009. *Id.* at 46. Again, the form indicated that

Brown wished to receive the 120 Certain Payment annuity option, which provided for $3,508.80

per month, for the life of Brown but in no event less than 120 months. *Id.*

On August 5, 2009, the Trust informed Brown that his Early Retirement Pension had been

"recomputed as a Disability effective December 1, 2006." *Id.* at 36. The Trust issued a check in

the amount of $45,816.46, which represented the difference between the amount of Brown's 120

Certain Payments monthly benefit dating to December 1, 2006, and the amount Brown received

from his 50% Husband-and-Wife Early Retirement Pension payments beginning October 1, 2007,

less the Level Income Option income he had received. *Id.* While the $3,508.80[7] monthly benefit

---

7. Although the Trust's August 5, 2009 letter informed Brown that his 120 Certain Payments monthly benefit would be $3,476.74, the Trust incorrectly omitted Brown's contributions between December 1, 2006 and October 1, 2007, when it calculated his Disability Pension benefit. *Id.* at 1.

would be retroactive to December 1, 2006—Brown's SSDI Date of Commencement—the Trust's pension recompute analyses consistently maintained October 1, 2007, as Brown's Disability Pension ASD. *Id.* at 37, 60, 62-63, 70.

**C. Brown's Death and Stamper's Appeal of Trust's Benefit Determination**

Brown passed away on December 24, 2017—123 months after his October 1, 2007 ASD. Doc. 26-9 at 18, 34. The Trust sent a letter to Stamper on January 11, 2018 to inform her that she would not be entitled to additional monthly pension benefits, stating in relevant part, "Mr. Brown's pension was effective October 1, 2007, so the 120-Month Certain form of benefit was completed September 1, 2017." *Id.* at 23. Stamper contacted the Trust to inquire about its determination regarding termination of benefits, stating that she believed the 120 payments began when Brown converted his Early Retirement Pension to Disability in August 2009—not from Brown's Early Retirement ASD. *Id.* at 12, 22. In response to her inquiry, the Trust provided Stamper with a written explanation of its determination, writing in pertinent part:

> Your husband retired October 1, 2007 on an Early Retirement Pension under the 50% Husband and Wife Option. In August 2009, your husband's pension benefit was converted from an Early Retirement Pension payable under the 50% Husband and Wife Option to a Disability Pension payable under the 120 Month Certain Option. The 120 month guarantee started on your husband's Annuity Starting Date of October 1, 2007. It did not start from the time his pension was converted from an Early Retirement Pension to a Disability Pension because **upon conversion, your husband received a lump sum Auxiliary Disability benefit equal to the Disability benefit under the 120 Month Certain amount which was payable under the Disability Pension dating back to December 2006.** Therefore, commencing the 120 month guarantee upon conversion in August 2009 would effectively grant a guarantee period in excess of 120 months for the Disability Pension monthly benefit amount.

---

In 2014, the Trust recalculated Brown's benefit and found that his monthly benefit should have been $3,508.80 under the 120 Certain Payments option. *Id.* Brown's monthly pension payments were adjusted accordingly, and the Trust issued Brown a check in the amount of the backpay, plus interest, that he was owed due to the discrepancy. *Id.*

*Id.* at 1. The Trust enclosed the "How My Pension Is To Be Paid" form executed by Brown and Stamper before a Notary Public on June 18, 2009, in which Brown elected to receive his Disability Pension in the form of a 120-month certain payment annuity. *Id.* at 3.

In accordance with the Plan's appeals procedure, Stamper initiated an appeal of the Trust's denial of further pension benefits. Doc. 26-6 at 66. Plaintiff's appeal was presented to the Trust's Board of Trustees' Pension Appeals Committee on June 12, 2018. *Id.* at 15-16. The Trustees denied Stamper's appeal, and in a written explanation of its denial, the Trust cited Eleventh Restatement of the Pension Plan § 4.07(f), which provides for revocation of a Husband-and-Wife form of benefit upon conversion to a Disability Pension, and 7.05(g), which governs the effective date of a converted Disability Pension.[8] Doc. 26-6 at 1-2. In other words, the Trust took the position that Brown's Disability Pension ASD was retroactive to his Early Retirement Pension ASD, with Brown being entitled to an Auxiliary Disability Benefit from his SSDI date of entitlement in December 2006 until his ASD in October 2007.

Stamper now requests judicial review of the Trust's denial of benefits, filing her Complaint on June 21, 2019. Doc. 2. Stamper's Complaint seeks one claim for relief under 29 U.S.C. § 1132(A)(1)(B) to enforce the terms of the Plan and recover the benefits to which she is allegedly entitled.

---

8. In relevant part, § 7.05(g) of the Plan states that an Early Retirement pensioner who receives an SSDI award "with a date of entitlement prior to the commencement of his Early Retirement Pension . . . will be allowed . . . to receive a Disability Pension." Doc. 26-4 at 53. It further provides that "**[t]he effective date** of the Disability Pension **will be determined in accordance with Section 3.11**" of the Plan. *Id.* (emphasis added). Importantly, § 3.11 of the Plan states that a Disability Pension "**shall commence on the Participant's Annuity Starting Date**," and if the SSDI date of entitlement predates the ASD, the participant will be entitled to an "Auxiliary Disability Benefit," which is "equal to the monthly benefit . . . between the entitlement date of the [SSDI] and the Annuity Starting Date of the Disability Pension." *Id.* at 20 (emphasis added).

## II. Standard of Review

A plan beneficiary, like the Plaintiff in this case, may file a civil action under 29 U.S.C. § 1132(a)(1)(B), seeking recovery of plan benefits or the enforcement of the plan's terms. A beneficiary seeking enforcement under § 1132(a)(1)(B) carries the burden of establishing that she is entitled to benefits under the terms of the plan. *Hodges v. Life Ins. Co. of N. Am.*, 920 F.3d 669, 680 (10th Cir. 2019) (citing *Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1324 (10th Cir. 2009). Thus, in order for Plaintiff to prevail on her § 1132(a)(1)(B) claim, she must establish that the terms of the Plan administered by the Trust entitle her to the benefits she seeks.

Generally, a plan administrator's benefit determination is reviewed *de novo*; however, where—as here—the terms of the plan confer discretionary authority upon its administrator to determine eligibility for benefits or to construe the terms of the plan, the administrator's decision is reviewed under an arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Under this standard, the court's review is confined only to the administrative record and must consider whether the rationale asserted by the plan administrator in its decision was in accordance with the documents and instruments governing the plan." *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.,* 491 F.3d 1180, 1193 (10th Cir. 2007) *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008). The administrator's decision will be upheld "so long as it was made on a reasoned basis and supported by substantial evidence." *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker," requiring "more than a scintilla but less than a preponderance." *Rekstad v. U.S. Bancorp,* 451 F.3d 1114, 1119-20 (10th Cir. 2006) (citations omitted). "The Administrator['s] decision need not be the only logical one nor even the best one,"

*Woolsey v. Marion Lab'ys, Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991); rather, the decision need only "fall somewhere on a continuum of reasonableness—even if on the low end." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (quoting *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir.1999)).

Conversely, "[i]ndicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by a fiduciary." *Mantooth v. AT & T Umbrella Benefit Plan No. 1*, 804 F. Supp. 2d 1171, 1178 (N.D. Okla. 2011) (quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002)). A conflict of interest arises in cases where an ERISA fiduciary plays a dual role in both determining eligibility and paying claims from its own pocket. *Mantooth*, 804 F. Supp. 2d at 1178 (citing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). When such a conflict arises, the Supreme Court has instructed courts to review an administrator's decision by "taking account of several different, often case-specific, factors, reaching a result by weighing all together." *Glenn*, 554 U.S. at 117. The Tenth Circuit has interpreted this to mean reviewing courts should employ "a combination-of-factors method of review" in which importance attached to any conflict of interest is "proportionate to the likelihood that the conflict affected the benefits decision." *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir. 2009) (quoting *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1193 (10th Cir.2009). The Tenth Circuit is clear, however, that the existence of a conflict of interest does not alter a court's arbitrary and capricious standard of review—the conflict is merely a factor affecting only "the outcome at the margin, when [the court] waver[s] between affirmance and reversal." *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009).

Here, the parties do not dispute that the arbitrary and capricious standard applies to the Court's review. (Docs. 30 at 9-12; 31 at 2-3). However, for the first time in her Reply, Plaintiff

raises the existence of a conflict of interest, simply asserting—without reference to evidence in the administrative record—that the Trust's "dual role of both plan insurer and administrator" creates a conflict of interest, citing *Van Steen*, 878 F.3d at 997. (Doc. 31 at 3). The Court is not persuaded that Plaintiff has successfully established a meaningful conflict of interest in this case. First, unlike *Van Steen*, 878 F.3d at 997, where the plan administrator was also the plan insurer, the Plan in this case is a multi-employer contribution pension fund, which is administered, but not insured by, the Trust, Doc. 26-1 at 9-13. Second, even if an inherent conflict of interest does exist with the Trust's administration of the Plan, Plaintiff has not identified how or in what way that conflict of interest affected its decision in this particular case. *Graham*, 589 F.3d at 1358. Thus, to the extent there is an inherent conflict of interest, the Court will not substantially reduce the deference given to the Trust's decision. *Mantooth*, 804 F. Supp. 2d at 1179 ("[P]laintiff has not cited any evidence showing that the conflict of interest was particularly important in this case and the Court will not substantially reduce the level of deference to the Plan administrator's decision.").

### III. DISCUSSION

Stamper argues that, given the timing of Brown's SSDI award and his election of the 120-month payment option, there are only two possible outcomes under the relevant Plan rules and federal law: either (1) the 120-month option applies to Brown's retirement pension, but with an ASD later than October 1, 2007; or (2) Brown's election of the 120-month option is void and his Disability Pension reverts to the Plan's default form of benefit for married participants, namely, the 50% Husband-and-Wife survivor annuity. Doc. 29 at 12. The Court disagrees for the reasons discussed below.

**A. Under the Terms of the Plan, the Trust Reasonably Concluded Brown's ASD Was October 1, 2007**

As a preliminary matter, the Court notes that the ASD for Brown's Early Retirement was correctly established under the Plan Rules as October 1, 2007. Specifically, § 1.22 of the Plan Rules defines an ASD in pertinent part:

**Section 1.22 Annuity Starting Date**

(a) **Generally.** The Annuity Starting Date shall be the first day of the first calendar month starting after the applicant has fulfilled all of the conditions for entitlement to benefits, including the submission of a completed application for benefits, unless it is deferred by the applicant's election. Notwithstanding the foregoing,

　　(1) the establishment of an Annuity Starting Date under this Plan shall also be subject to the other requirements set forth in this Section 1.22, and to the spousal consent requirements set forth in Sections 4.03 and 4.09 of the Plan; . . .

. . . .

(b) **Explanation of Benefits.** The Annuity Starting Date shall not be less than 30 days after the Plan provides the Participant a written explanation of the available forms of payment, unless at least one of the exceptions set forth in subsubsection (c) is met. . . . If at least one of the exceptions set forth in subsection (c) is met, then the Annuity Starting Date may be established under subsection (a) without having satisfied the otherwise applicable 30-day notice requirement. In no event, even if the 30-day notice requirement is waived, may an Annuity Starting Date be established that is prior to the date on which the Plan provides the Participant a written explanation of the available forms of payment. Such written explanation shall be provided without regard to what form of payment the Participant and spouse, if any, ultimately elect, and shall not predate the Annuity Starting Date by more than [180] days.[9]

Doc. 24-4 at 86. The record reflects that, on July 24, 2007, the Trust sent Brown the application for pension benefits, which included a detailed explanation of the benefit forms available to him. Within 90 days of receiving the application and explanation of benefit elections, Brown submitted

---

9. As of January 1, 2007, the 90-day requirement was amended to 180 days. Doc. 26-4 at 103. The Court substituted the amended language for clarity and ease of reading.

his complete Early Retirement Pension application on September 14, 2007. As of the date on which Brown submitted his application, he had fulfilled all conditions for Early Retirement Pension benefit. While Brown's pension application was submitted less than 30 days before October 1, 2007, Brown and Stamper waived the mandatory 30-day waiting period before commencement of pension benefits, in accordance with subsection (c) of § 1.22.[10] Accordingly, the Trust correctly established Brown's ASD as October 1, 2007, for his Early Retirement Pension.

### 1. Converting to Disability Pension Did Not Alter Brown's ASD

Under §7.05(g) of the Plan Rules, when an Early Retirement pensioner is granted an SSDI award "with a date of entitlement prior to the commencement of his Early Retirement Pension . . . or during the immediately following 12-month period," he will be allowed to change it upon a "written request for ***conversion***," Doc. 26-4 at 53-54 (emphasis added). The "effective date" for a converted Disability Pension is on the participant's ASD. *Id.* at 20 (Plan Rule § 3.11(a)). In the event a participant's ASD is *after* his SSDI "Entitlement Date"—i.e., the date on which he became entitled to SSDI benefits—then Plan Rule § 3.11(b) provides that the participant is entitled to an "Auxiliary Disability Benefit," which is a lump sum Disability Pension payment that covers the period of time between the SSDI Entitlement Date and the pensioner's ASD. *Id.*

Here, the Trust construed the term "conversion" in §7.05(g) to mean a change "from one form to another." Doc. 30 at 20 (quoting Black's Law Dictionary, "conversion" (11th ed. 2019)). Specifically, an Early Retirement pensioner who converts to a Disability Pension changes the form

---

10. Section 1.22(c)(3) of the Plan provides that a participant may consent in writing to the establishment of an ASD before the mandatory 30-day waiting period before commencement of benefits, provided that they acknowledge their right to take up to 30 days to consider the election options, the participant is given seven days to change or cancel his election, and distribution of benefits is at least seven days after the ASD. Doc. 26-4 at 87. Brown and Stamper acknowledged their right to take up to 30 days to consider their elections before the ASD, Doc. 26-6 at 164, and the benefits did not commence until January 2008, 26-7 at 80-81.

of pension, and therefore, the calculation of pension benefits; the Plan, however, is silent as to whether the ASD for a converted pension must reflect the date of conversion or whether it remains the same as the previously established Early Retirement ASD. The Trust reasonably construed the "effective date" of the converted Disability Pension to be the pensioner's previously established ASD with an Auxiliary Disability Benefit to cover the period between the pensioner's SSDI Entitlement Date and his previously established ASD. *Id.* at 18-20. This interpretation is facilitated by Plan Rule § 4.07(f), which, as discussed below, provides for a retroactive ASD.[11] *Id.* at 16-17. Thus, when Brown converted his Early Retirement Pension to Disability, the Trust changed only the form of pension, not his ASD. *Id.* Further, the Trust paid Brown an Auxiliary Benefit, which was an amount equal to his monthly Disability Pension from Brown's SSDI date of entitlement to ASD.

Stamper argues that Brown's ASD for his converted Disability Pension under § 3.11(a) is determined according to § 1.22 for his Disability Pension—i.e., an entirely new ASD—and, thus, the money Brown received from the Trust in August 2009 was necessarily an Auxiliary Disability Benefit. Doc. 29 at 17. Specifically, Stamper argues: (1) Brown must be eligible for disability before his disability ASD; (2) Brown's SSDI award came in January 2008—after the October 1, 2007 ASD; (3) Plan § 3.11(a) states that a Disability Pension begins on the participant's ASD; (4) the Auxiliary Disability Benefit under Plan § 3.11(b) differentiates between the ASD and "disability entitlement date; and (5) the Trust sent Brown a lump sum disability benefit payment in August 2009. *Id.* at 16-17. Therefore, she concludes, "the ASD according to the plain language of the Plan Rules cannot be earlier than September 2009." *Id.* at 17.

---

11. A retroactive ASD is an annuity starting date affirmatively elected by a participant that predates a participant's waiver of the Husband-and-Wife Pension. Doc. 30 at 17-18; *see also* 26 U.S.C. § 417(a)(7); 26 C.F.R. § 1.417(e)-1 (b)(3)(iv).

Even if the Court were to accept the premises of her argument in isolation, the conclusion she draws from them does not follow. To the contrary, her argument relies on the unstated premise that a *converted* Disability Pension must have an ASD independent of the Early Retirement Pension. That assumption finds no support in the plain language of the Plan. At most, Stamper has identified an ambiguity in the terms of the Plan—i.e., whether § 1.22 applies to converted pensions. To the extent that the Plan's treatment of the ASD for converted pensions is ambiguous, the Trust construed §§ 7.05(g) and 4.07(f) to displace the general rules regarding the establishment of a converted Disability Pension ASD. *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010) (When analyzing ERISA plan, "if both a general and a specific provision apply to the subject at hand, the specific provision controls."). To that end, the Trust determined that the ASD for converted Disability Pensions are retroactive to the Early Retirement ASD. Stamper's interpretation of the Plan as it relates to the ASD for converted Disability Pensions is simply different from the Trust's interpretation. *See Kimber*, 196 F.3d at 1100 ("When a plan administrator is given authority to interpret the plan language, and more than one interpretation is rational, the administrator can choose any rational alternative."). The Court does not find that the Trust's interpretation was unreasonable or made in bad faith and, thus, declines to set it aside. *Trujillo v. Cyprus Amax Mins. Co. Ret. Plan Comm.*, 203 F.3d 733, 736 (10th Cir. 2000) (Court "will not set aside a benefit committee's decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith").

### 2. Section 4.07(f) Permitted Brown to Change Form of Benefit After His ASD

Generally, Plan participants who receive their pension benefit in the form of a Husband-and-Wife Pension may not alter or revoke their election after payment of the pension has commenced. Doc. 26-4 at 33. However, § 4.07(f) of the Plan provides an exception when a

16

pensioner "is granted a Social Security Disability Award . . . effective during the 12-month period immediately following the commencement of his Early Retirement Pension." *Id.* In such a case, where the pensioner converts to a Disability Pension, the pensioner "will be allowed to change his previous election or rejection of the Husband-and-Wife Pension . . . provided the change is elected at the time the . . . Pension is changed. *Id.*

The Trust reasonably construed § 4.07(f) to be applicable because Brown's Disability Pension was granted an SSDI award effective during the 12-month period immediately following the commencement of his Early Retirement Pension. Specifically, the Trust construed the term "effective" to mean "in operation at a given time." Doc. 30 at 13 (quoting Black's Law Dictionary "effective" (11th ed. 2019)). Moreover, the Trust interpreted § 4.07(f) to be a rule of specific applicability for pensioners converting to a Disability Pension that displaced the general rule under §§ 1.22 and 4.03(b). *Id.* at 14-15.

Stamper challenges the Trust's interpretation, arguing that § 4.07(f) applies only when a pensioner's SSDI date of entitlement is after his ASD. Doc. 29 at 25-27. She premises her argument on the fact that the phrase "effective during" in § 4.07(f) "plainly emotes [sic] a beginning date[,] not an operational period." Doc. 31 at 5. Because the effective date of Brown's SSDI award was December 1, 2006, and because his Early Retirement Pension ASD is October 1, 2007, Stamper asserts that is inapplicable to Brown's converted Disability Pension. Doc. 29 at 26-27. That fact, Stamper contends, precluded Brown from changing or revoking his 50% Husband-and-Wife Pension after his ASD. *Id.*

Yet, Stamper's argument here has the same infirmity as her argument regarding § 7.05(g), namely, that her interpretation of an (at most) ambiguous term in the Plan is simply different than the Trust's interpretation. The Court finds that the Trust's interpretation of the word "effective" as

an operational period—i.e., "effective during"—is not untethered from an ordinary understanding of the word as used in a phrase. *Kimber*, 196 F.3d at 1100. Thus, Stamper has not established— and the Court declines to find—that the Trust's interpretation of Plan Rule § 4.07(f) is unreasonable or made in bad faith. *Trujillo*, 203 F.3d at 736.

**3. The Trust's Determination Is Not Inconsistent With Prior Interpretations of Plan**

The reasonableness of a plan administrator's determination will also be reviewed for its consistency with prior interpretations of the plan by the administrator. *Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 929 (10th Cir. 2006). Stamper argues that the Trust's interpretation of §§ 7.05(g) and 4.07(f), in providing for a retroactive ASD for converted Disability Pensions, is inconsistent with the Trust's prior interpretation of the Plan. Doc. 29 at 27-28. Stamper cites to a 2014 memo in which the Trust's attorney advised the Trust that "*the [Plan] has not been amended to permit retroactive annuity starting dates.* Plan Section 1.01 defines the [ASD] as the first day of the calendar month starting after all of the conditions for entitlement to benefits, *including the submission of a completed application for benefits.*" *Id.* at 27.

The Court notes at the outset that the 2014 memo was a "legal opinion" drafted by the Trust's attorney, not an interpretation of the Plan by the Trustees. Doc. 26-7 at 20. As the Trust observes in its Response, Stamper fails to identify anything in the record that shows the Trustees, rather than its counsel, concluded that the Plan did not have a retroactive ASD at the time Brown converted to a Disability Pension. Doc. 30 at 17; *Geddes*, 469 F.3d at 929 (Court's review asks whether the plan administrator's interpretation of ambiguous plan language "is consistent with any prior interpretations *by the plan administrator*") (emphasis added)).

Moreover, the 2014 memo cited by Stamper was not interpreting the Plan in effect at the time Brown converted to a Disability Pension; rather it was a legal opinion interpreting the Twelfth

Restatement of the Plan. Given that the Trustees denied Stamper's claim after being advised that "the Participant's conversion from Early Retirement to Disability was handled in a manner consistent with Plan procedures then in effect," the 2014 memo offered by Stamper does not establish an inconsistent prior interpretation of the relevant Plan.[12]

Finally, the record is replete with documentation from the Trust at the time Brown converted to a Disability Pension. In particular, a letter from the Trust to Brown on December 3, 2014, explicitly references Brown's Disability Pension ASD as October 1, 2007. Doc. 26-7 at 1. Additionally, the Trust's pension recompute analyses consistently referenced Brown's "Annuity Date" of October 1, 2007, and his "Auxiliary Date" of December 1, 2006. *Id.* at 28, 37, 60, 63, 70. Thus, the Court is not persuaded that the Trust's denial of Stamper's benefits was an "after-the-fact construction" of the Plan. Doc. 31 at 5.

**B.  The Trust's Denial of Benefits Was Not Contrary to Law**

Stamper argues that the Trust's denial of benefits is contrary to the Code and Treasury Regulations because (1) the Plan in effect at the time of Brown's pension conversion did not provide for a retroactive ASD, and (2) Brown's explanation of benefits did not sufficiently advise

---

12. The Trust attached the Twelfth Restatement of the Plan as an exhibit to its Response Brief, Doc. 30-1, but the exhibit was not part of the administrative record. Generally, the Court's review is limited to the administrative record; however, where the evidence does not relate to benefit eligibility, the Court may supplement the record. *Murphy v. Deloitte & Touche Group Ins. Plan,* 619 F.3d 1151, 1157–59 (10th Cir.2010). While the exhibit merely provides context to the 2014 memo that Stamper references, the Court need not consider it in order to address Stamper's argument. However, the Court nevertheless notes that the retroactive ASD provision, § 4.07(f), is omitted from the Twelfth Restatement of the Plan. *Compare* Doc. 26-4 at 32-33 (Section 4.07 of the Eleventh Restatement outlines the circumstances under which a Husband-and-Wife Pension is not effective, which includes conversion to a Disability Pension under subsection (f)), *with* Doc. 30-1 at 44 (Section 6.08 of the Twelfth Restatement outlines the conditions under which a Husband-and-Wife Pension is not effective, but it includes only subsections (a)-(e)).

her of the retroactive effect of her waiver of the Husband-and-Wife Pension. Doc. 29 at 23-25. The

Court addresses each argument in turn.

### 1. The Plan at the Time of Brown's Pension Conversion Provided for a Retroactive ASD

Under 26 U.S.C. § 417, waiver of a qualified joint and survivor annuity (i.e., Husband-and-

Wife Pension) must occur within 180 days before the ASD, unless the plan provides for a

retroactive ASD. *See* 26 U.S.C. § 417(a)(6)-(7). Stamper argues that the Trust cannot base Brown's

election of the 120 Certain Payment option on his October 1, 2007 ASD because that election

constituted a waiver of the Husband-and-Wife Pension, which occurred outside of the mandatory

180-day election period. Doc. 29 at 23-24. She asserts that the Plan did not provide for a retroactive

ASD at the time Brown converted to a Disability Pension, as evidenced by the 2014 memo from

the Trust's counsel regarding the Twelfth Restatement of the Plan. *Id.* at 23-24. Thus, she

concludes, the Trust's determination that Brown both waived the Husband-and-Wife Pension and

maintained his October 1, 2007 ASD is contrary to 26 U.S.C. § 417(a). *Id.*

However, as discussed above, Stamper's reliance on this memo is misguided. Although

Stamper argues that the absence of the words "retroactive annuity starting date" from § 4.07(f) and

the entire Eleventh Restatement of the Plan implies that the Plan did not provide for a retroactive

ASD, she cites no authority that requires an ERISA plan to use those words or sequence of words

in order to comply with 26 U.S.C. § 417(a)(7) and C.F.R. § 1.417(e)-1 (b)(3)(iv). Doc. 31 at 8.

Stamper fails to identify anything in the record affirmatively demonstrating that the Trustees

interpreted the Eleventh Restatement of the Plan to not allow a retroactive ASD.[13] The Trust

---

13. To some extent, Stamper attempts to show that the Plan does not provide for a retroactive ASD
by relying on the language of Plan Rule § 1.22. Doc. 29 at 23-24. As discussed, the Trust has
interpreted § 1.22 to be a general Plan Rule, which is displaced by the more specific Plan Rule, §
4.07(f), and thus, § 1.22 is not germane to the ASD for converted Disability Pensions.

contends that § 4.07(f) provides for a retroactive ASD in the Eleventh Restatement of the Plan. Doc. 30 at 16-17. Given that § 4.07(f) of the Plan does allow a participant to waive the Husband-and-Wife survivor annuity after commencement of benefit payments, as would be required in order for a retroactive ASD in an ERISA plan, the Court finds the Trust's argument persuasive.

### 2. The Trust Sufficiently Explained Waiver of the Husband-and-Wife Pension

Under 26 U.S.C. § 417(a)(2), a spouse's consent to waiver of the Husband-and-Wife survivor annuity must acknowledge the effect of such election. In order to effectuate this understanding, the administrator of an ERISA plan must provide participants with a written explanation regarding waiver of the Husband-and-Wife survivor annuity that is "in a manner calculated to be understood by the average participant." 26 C.F.R. § 1.417(a)(3)-1 (a)(4). From this, Stamper argues that the manner in which the Trust presented the 120 Payment Option did not adequately inform her that she "was actually electing to receive less than 120 Payments from the election date going forward." Doc. 29 at 25. Stamper concludes that, because she did not understand the retroactive start date, the waiver was ineffective. *Id.*

The Court notes that Stamper has not cited authority defining "manner calculated to be understood by the average participant"—only that *she* apparently did not understand it. The Court declines to define that Treasury Regulation here because the record establishes that the Trust reasonably concluded that Stamper's waiver was valid. By affirmatively electing the 120-month option, Brown and Stamper sought to waive the Husband-and-Wife Pension two times—with their first attempt on May 5, 2008, and their second on June 18, 2009. Doc. 26-7 at 46, 64. Stamper also disregards the fact that the pension calculations on the written benefit explanations remained the same over the span of March 2008 through July 2009. *Id.* at 56-58, 67-69. Given that a later ASD for the converted Disability Pension would alter those calculations in accordance with the Plan

terms, it is clear to the Court that the time of conversion was independent of the structure of the 120 payments. Moreover, Brown's letter to the Trust in June 2009 provides an exact amount that he would receive based on the 120 Certain Payment monthly income from December 2006 through July 2009, less repayment of his Level Income payments. *Id.* at 54. Brown's June 2009 letter acknowledges the "total of 21 months" that he had been receiving Level Income under his Early Retirement Pension since his pension ASD. *Id.* Stamper and Brown received $45,816.46 upon conversion to the Disability Pension in September 2009—with the monthly benefit extending to December 1, 2006. Taken together, the Court finds that the Trust reasonably concluded Stamper's waiver was valid and its explanations not deficient.

## IV. CONCLUSION

The record reflects that the Trust took great care to accommodate the request to convert Brown's Disability Pension and to ensure payment according to the terms of the Plan. There is no dispute that, if Brown's ASD was October 1, 2007, and if the 120 Certain Payment Option was validly elected, then Brown had received more than 120 monthly pension payments at the time of his passing. The Trust reasonably construed the Plan when it determined that the ASD for Brown's converted Disability Pension was October 1, 2007. Further, the election to waive the Husband-and-Wife annuity and receive the Disability Pension in form of a 120 Certain Payment Option was valid and not contrary to law. Because Brown had received more than 120 monthly Disability Pension payments between October 2007 and his passing in December 2017, Stamper was not entitled to further monthly Disability Pension benefits from the Trust. Stamper makes no other claim for survivor benefits under the Plan. Accordingly, Stamper has failed to meet her burden of establishing entitlement to benefits, and therefore, her claim is **DENIED**.

TERENCE C. KERN
United States District Judge